## Case No. 7,199.
### The JAMES PLATT.
[9 Ben. 491.] [1]
District Court, S. D. New York. May, 1878.

A. N. Weller, for libellant.
Beebe, Wilcox & Hobbs, for claimant.

CHOATE, District Judge. The libellant shipped on board the canal-boat James Platt, 400 barrels of cement under an agreement between him and the master, whereby the master agreed to carry the same from pier No. 1, North river, and to deliver them, 250 barrels on board a steamer at pier 36, North river, and 150 in Brooklyn. The agreement was made on the 19th day of February, 1878, and the cement was taken on board on the morning of the 21st. The 150 barrels to be delivered in Brooklyn were put in the hold, the 250 barrels to be delivered on the steamer at pier No. 36 were placed on deck. The freight agreed upon was $23.00 for the entire service. It was undoubtedly the expectation of both parties that the cement to be delivered at pier 36 would be delivered on the same day on which it was taken on board the canal-boat, and this probably accounts for the fact that this part of the cargo was placed on deck while the rest was put in the hold. The libellant knew that the cement bound for pier 36 was placed on deck, and cautioned the master to keep it dry, which the master said he would do. Owing to some delay in getting the cement on the canal-boat, and the lateness of the hour at which she arrived at pier 36, and the stopping of the work of shipping it on the steamer at about half-past six o'clock in the evening, a part of the deck cargo remained on the canalboat all night, and was injured by the rain, and it is for this damage that the libel is brought. This article is one liable to be injured by exposure to rain, as the master well knew. When the men in charge of the steamer refused to receive any more that night the weather was very threatening, and there was a strong probability of a heavy rain, and it began to rain about eight o'clock in the evening, and rained all night. The master was warned that it was likely to rain by the libellant's agent and by others, and cautioned to protect the cement in case it was left on deck at the end of the day's work, but he took no precautions whatever for its protection, although he could easily and without expense have put it in the hold, or could have obtained tarpaulins to cover it, or could have landed it on the pier where it would have been under cover.

The claimants insist that in consenting to the shipment of the cement on deck the libellant took on himself all the risks of its exposure to the weather. Doubtless, he did take the risks of any sudden and unexpected injury by the weather, which could not, in the exercise of due diligence, have been foreseen and prevented by the master, but I think this consent to the stowage on deck was for the convenience of the master to make the delivery to the steamer easier, and that it did not absolve the master from the ordinary obligation of a common carrier to protect the goods, which were in this case peculiarly liable to injury from water. The rule that if goods stowed on deck with the consent of the shipper are jettisoned, the shipper must bear the loss has no application to this case. The carrier is not absolved by the fact that the goods are, with the consent of the shipper, laden on deck from the obligation to protect them against damage from dangers actually foreseen, and easily guarded against while in transit. In this case the master was guilty of gross negligence, and that was the immediate cause of the damage.

Other grounds of defence urged are that there was an express agreement on the part of the shipper that the goods should be put on board the steamer the day they were shipped, and that he was responsible for the refusal of the steamer to take them all that day, but these points have no basis in the evidence.

Decree for libellant for amount of damage agreed upon, $131.00 and costs.

## Case No. 7,200.
### The JAMES ROY.

## Case No. 7,201.
### The JAMES ROY.
[5 Ben. 177; [1] 14 Int. Rev. Rec. 22.]
District Court, S. D. New York. June, 1871.

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]